UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

JEROME DUNCAN, INC.,                           Case No. 05-59728
                                               Chapter 7
            Debtor.                            Hon. Marci B. McIvor
_____/

GAIL DUNCAN,

            Plaintiff,

v.                                             Adv. Proc. 06-4570

FORD MOTOR CREDIT CORPORATION
and FORD MOTOR COMPANY,

            Defendants.
_____/

OPINION DENYING PLAINTIFF'S MOTION TO DISQUALIFY
BANKRUPTCY JUDGE McIVOR

For the reasons, set forth below, this Court DENIES Plaintiff's Motion to Disqualify Bankruptcy Judge McIvor.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Gail Duncan was the president and majority shareholder of Jerome Duncan, Inc ("JDI"). Her husband, S. K. Tejpaul, was also a shareholder of JDI. In June 2005, Gail Duncan and S. K. Tejpaul placed the Debtor, an auto dealer located in southeastern Michigan, in a Chapter 11 bankruptcy. This action was subsequently converted to a

1

Chapter 7 proceeding. On March 29, 2006, Plaintiff Gail Duncan filed a complaint in the Oakland Circuit Court against Defendants Ford Motor Credit Corporation ("FMCC" and Ford Motor Company ("Ford"), alleging that Defendants conspired to cause, and did in fact bring about, the financial ruin of the Debtor by determining that Debtor had defaulted on its financial obligations to FMCC.  Consequently, Plaintiff alleges that Defendants are liable for conspiracy to defraud, fraud, constructive fraud, breach of mortgage, unjust enrichment a violation of the Michigan Antitrust Reform Act, Mich Comp. Laws § 445.771 (2006), *et seq.,* fraud in the inducement, and "inoperative waivers."

On April 19, 2006, FMCC filed a notice of removal pursuant to 28 U.S.C. § 1334 and Fed. R. Bankr. P. 9027.  The action was removed to this Court and opened as an adversary proceeding (A.P. 06-4570).  Ford subsequently filed a statement as required by Fed. R. Bankr. P. 9027(E), acknowledging that the proceeding was core and consenting to the entry of final orders by the Bankruptcy Court in the event that the proceeding was determined to be non-core. Plaintiff filed a Motion to Withdraw the Reference on April 29, 2006, arguing that immediate withdrawal was necessary because the Bankruptcy Court lacked subject matter jurisdiction over Plaintiff's claims and was unable to conduct the jury trial requested by Plaintiff. The United States District Court for the Eastern District of Michigan denied that Motion at an August 8, 2006 hearing, and entered an order denying the motion on August 11, 2006. On May 19, 2006, while her Motion to Withdraw the Reference was pending, Plaintiff filed the Motion for Remand or for Abstention that remains pending before this Court. Defendants filed a Response to the Motion to Remand and a Motion to Dismiss the Complaint.

2

The Court scheduled the Motion for Remand and the Defendant's Motion to Dismiss for hearing on October 31, 2006. On October 30, 2006, Plaintiff filed her Motion to Disqualify Bankruptcy Judge McIvor. The Motion to Disqualify contends that this Court should be disqualified from hearing matters in the present adversary proceeding and in adversary proceeding numbers 05-5707 and 06-4661. Although this motion alleges two separate grounds for the Court's disqualification, both are based on the Court's actions at a September 23, 2005 hearing in another adversary proceeding brought by Richard Duncan, in which he sought the removal of Plaintiff and Tejpaul as directors of JDI (the "Debtor") and the appointment of a chief restructuring officer ("CRO"). *In re Jerome Duncan, Inc.,* (*Duncan v. Duncan*)*,* Case No. 05-5707. *See* Transcript of September 23, 2005 Hearing.

At the hearing on September 23, 2005, the Court heard from counsel for Richard Duncan, counsel for the United States Trustee, and counsel for the Official Unsecured Creditors Committee (the "Creditors Committee"), all of whom favored the appointment of a CRO, and from counsel for the Debtor (and Gail Duncan and S.K. Tejpaul as the principals of the Debtor), counsel for S. K. Tejpaul, in his individual capacity, counsel for Gail Duncan, in her individual capacity, and counsel for FMCC, all of whom opposed the appointment of a CRO. After hearing argument from the parties, the Court requested that counsel for Richard Duncan, the U.S. Trustee, the Creditors Committee, the Debtor, and FMCC adjourn to her chambers for a discussion. *See* 9/23/05 Transcript, at 128-29. Notably, neither counsel for Tejpaul nor counsel for Plaintiff voiced opposition to the in-chambers meeting prior to its occurrence.

Once the hearing resumed after the in-chambers meeting, counsel for Tejpaul

3

objected on behalf of both Tejpaul and Plaintiff, arguing in essence that the Court erred by allowing counsel for Richard Duncan to attend, while excluding counsel for Tejpaul and Plaintiff. *Id.* The Court noted those objections and made two decisions on the record: (1) the Court adjourned the hearing on Richard Duncan's motion to remove Plaintiff and Tejpaul in order to conduct a full evidentiary hearing; and (2) the Court directed all the parties to agree on a CRO based on its concerns about the management of the Debtor and stated that, if the parties failed to agree on a CRO, the Court would appoint one. 9/23/05 Transcript, at 128-31. Both Tejpaul and Plaintiff were allowed to participate in the process of selecting a CRO. *Id.*, at 131. On October 4, 2005, the Court entered an order appointing O'Keefe and Associates as CRO. 10/4/05 Order. The Court's order expressly noted that Plaintiff had no preference as the selection of a CRO and had left that choice to the other parties. *Id.,* at 2. Plaintiff did not appeal the entry of the order appointing a CRO.

Plaintiff's Motion now argues that the Court should be disqualified because (1) Plaintiff filed a complaint with the Sixth Circuit related to the September 23, 2005 hearing, and (2) the Court held an in-chambers conference without counsel for Tejpaul or Plaintiff present.

For the reasons set forth below, this Court denies Plaintiff's Motion to Disqualify Bankruptcy Judge McIvor.

II.

ARGUMENT

Plaintiff contends that this Court should be disqualified under 28 U.S.C. § 455(a),[1] which provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Under § 455(a), a court must assess "whether a reasonable person would infer, from all the circumstances, that the judge's impartiality is subject to question." *Baker v. City of Detroit*, 458 F.Supp. 374, 376 (E.D. Mich. 1978). In all cases, the movant bears the burden of establishing that disqualification is warranted under § 455. *In re Desilets*, 268 B.R. 516 (W.D. Mich. 2001). However, the ultimate decision on disqualification is within the Court's discretion. *Schilling v. Heavrin* (*In re Triple S Restaurants, Inc.*), 422 F.3d 405, 417 (6th Cir. 2006).

Generally, recusal under § 455(a) is necessitated by extra-judicial, as opposed to judicial factors. *See, e.g., In re Desilets,* 268 B.R. 516, 520 (W.D. Mich. 2001). The United States Supreme Court has explained, ". . . judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. … Almost invariably, they are proper grounds for appeal, not for recusal." *Liteky,* 510 U.S. at 555-56 (citations and quotations omitted). In the Sixth Circuit, this "extrajudicial source" factor has given rise to the frequent observation that disqualification under § 455 cannot be premised on purely judicial conduct. *See, e.g., United States v. Arhebamen,* 2006 WL 2793083 (6th Cir., Sept. 28, 2006) (unpublished) (citing *Green v. Nevers,* 111 F.3d 1295, 1303-04

---

[1] Plaintiff also alleges, without argument, that Bankruptcy Judge McIvor should be disqualified pursuant to 28 U.S.C. § 144. This Court finds that 28 U.S.C. § 144 does not apply to the bankruptcy courts. *In re Celotex Corp.*, 137 B.R. 868, 874 (Bankr. M.D. Fla. 1992)("Title 28 U.S.C. § 144 does not apply to the bankruptcy court.")

5

(6th Cir. 1997)); *Martin v. LaBelle,* 7 Fed. Appx. 492, 2001 WL 345791 (6th Cir. 2001) (unpublished); *United States v. Story,* 716 F.2d 1088, 1091 (6th Cir. 1983).

In this case, Plaintiff argues that the Court's impartiality "might reasonably be questioned" for two reasons: first, Plaintiff has filed a complaint with the Sixth Circuit Court of Appeals regarding this Court, and, second, the Court held an in-chambers conference during a related adversary proceeding from which Plaintiff's counsel was excluded. As discussed below, this Court finds that neither rationale warrants disqualification.

A. <u>Plaintiff's Motion is an Untimely Collateral Attack.</u>

As an initial matter, this Court denies Plaintiff's Motion because it is an untimely collateral attack on an order properly entered by this Court. As numerous courts – including the United States District Court for the Eastern District of Michigan – have held, an objection under § 455 must be timely. *See, e.g., Deuer Manufacturing, Inc. v. Kent Products, Inc.,* 760 F.Supp. 609, 611 (E.D. Mich. 1989) ("Sec. 455 requires that a party raise the issue of disqualification of the judge at the earliest moment after acquiring knowledge of the facts providing a basis for disqualification."). *See also, In re Big Rivers Electric Corp.,* 213 B.R. 962, 972 (W.D. Ky. 1997) (citing cases); *In re Jansen*, 107 B.R. 249, 254 (Bankr. D. Ariz. 1989). Moreover, "the appearance of impropriety may be raised on collateral attack only if asserted promptly upon learning the facts alleged to warrant recusal and *may not be raised collaterally if the opportunity to do so existed at a time when direct review was available.*" *Hardy v. United States,* 878 F.2d 94, 97-98 (2d Cir. 1989) (citing *Liljeberg v. Health Services Acquisition Corp.,*

6

486 U.S. 847 (1988)) (emphasis added). In other words, Plaintiff's motion must be timely and procedurally proper. The facts here show that Plaintiff's motion is neither.

In this case, the Court requested an in-chambers meeting on September 23, 2005 in open court and in the presence of counsel for both Tejpaul and Plaintiff. *See* 9/23/05 Transcript, at 128-29. Yet neither Tejpaul nor Plaintiff voiced opposition to being excluded from the in-chambers conference before it took place. *Id.* Instead, both waited until *after* the meeting had occurred and after any alleged error had arisen. Moreover, Plaintiff has now waited for *over a year* to raise any sort of objection to the in-chambers conference. Indeed, she never appealed the orders entered by the Court after the in-chambers conference.

Plaintiff's year-long delay in raising the issue of the 9/23/05 in-chambers conference makes her objection untimely. *See, Deuer,* 760 F. Supp. at 612 (holding that a delay of several months before filing a motion for recusal was "clearly contrary to the spirit of sec. 455" and "presumptively untimely"). *See also, Bradley v. Milliken,* 426 F. Supp. 929, 931 (E.D. Mich. 1977), *aff'd on other grounds,* 620 F.2d 1143 (6th Cir. 1980) (characterizing a motion under § 455 as untimely when it was filed fifteen months after the alleged conduct at issue). Furthermore, by raising the issue in a motion under § 455(a) rather than an appeal or motion for reconsideration, despite the fact that all of the relevant facts were known to her in time to raise a direct challenge, Plaintiff has mounted an inappropriate collateral attack which is procedurally improper. *See, Hardy,* 878 U.S. at 97-98. Plaintiff knew all she needed to know to raise a direct challenge in September 2005, yet she failed to do so. Accordingly, Plaintiff's Motion is both untimely and procedurally defective.

7

B.     Plaintiff's Complaint Does Not Require Disqualification Under § 455.

Apart from the untimeliness of Plaintiff's Motion, both grounds asserted by Plaintiff are legally deficient.  First, Plaintiff contends that the Court's disqualification is warranted solely because she has filed a complaint against the Court in the Sixth Circuit Court of Appeals.  Plaintiff cites no binding authority for this proposition and relies on *In re Olson,* 20 B.R. 206 (D. Neb. 1982), a decision from the United States District Court for the District of Nebraska.[2]

This Court rejects the holding of *Olson* because, under *Olson*, the filing of any complaint against a judge – no matter how baseless, or how divorced from reality – will automatically preclude that judge from adjudicating *any* matter involving the complainant. This finding creates an automatic vehicle for forum shopping: whenever a litigant is dissatisfied with the presiding judge, he or she need only file a complaint against the judge and that judge is necessarily disqualified.  For this reason, "courts have typically rejected recusal motions based on, and effectively created by, a litigant's deliberate act of criticizing the judge or judicial system." *In re Lickman (Henkel v. Lickman*), 284 B.R. 299, 304-05 (M.D. Fl. 2002) (quoting *United States v. Owens,* 902 F.2d 1154, 1156 (4th Cir. 1990)). As stated by the Fourth Circuit Court of Appeals:

> Parties cannot be allowed to create the basis for recusal by their own deliberate actions. To hold otherwise would encourage inappropriate "judge shopping." It would invite litigants to test the waters with a particular judge and then to take steps to create recusal grounds if the waters proved uncomfortably hot.

---

[2]The *Olson* decision has been criticized by several courts, including *In re WHET, Inc.*, 33 B.R. 424, 427 (D. Mass. 1983), which stated that "*Olson* is not the view of the First Circuit and may, in fact, be an aberration."

8

*Owens,* 902 F.2d at 1156 (quoted in *Lickman*, 284 B.R. at 304-05). That is precisely what Plaintiff has done in this case.

Courts have found that 28 U.S.C. 455(a) " 'must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice.'" *United States v. Marshall*, 77 F. Supp. 2d 764, 767 (N.D. Tex. 1999) *citing United States v. Cooley*, 1 F.3d 985, 993 (10th Cir.1993) (*quoting Franks v. Nimmo*, 796 F.2d 1230, 1235 (10th Cir.1986)). For example, a judge is not disqualified merely because a litigant sues or threatens to sue him. *Marshall*, 77 F. Supp. 2d at 768 *citing Matter of Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir.1993); *Olsen v. Wainwright*, 565 F.2d 906, 907 (5th Cir.1978); *United States v. Grismore*, 564 F.2d 929, 933 (10th Cir.1977), *cert. denied*, 435 U.S. 954 (1978); *Jones v. City of Buffalo*, 867 F. Supp. 1155, 1163 (W.D.N.Y.1994);*United States v. Blohm*, 579 F.Supp. 495, 505 (S.D.N.Y.1983) *In re Martin-Trigona*, 573 F.Supp. 1237, 1243 (D.Conn.1983), *appeal dism'd,* 770 F.2d 157 (2d Cir.1985), *cert. denied*, 475 U.S. 1058 (1986).

In this case, Plaintiff waited until over a year had passed to file a motion that would put the propriety of the in-chambers conference to the test and this motion to disqualify was filed on the eve of a hearing on Ford and FMCC's motions to dismiss Plaintiff's complaint. A reasonable person would conclude that the filing of the Complaint with the Sixth Circuit is merely an attempt to avoid an adverse decision on those pending motions rather than a reasonable fear that the Court is biased. For the above-stated reasons, this Court rejects Plaintiff's assertion that her complaint, in and of itself, requires this Court's disqualification under § 455.

## C. The September 23, 2005 Conference Does Not Require Disqualification Under § 455.

### 1. Plaintiff's Motion is Based on Judicial Rather than Extra-Judicial Conduct.

As previously noted, § 455 ordinarily requires disqualification only where a judge's *extra-judicial* conduct would lead a reasonable person to question a judge's impartiality. *See,* 28 U.S.C. § 455(a); *Story,* 716 F.2d at 1091. Accordingly, a motion under § 455 typically cannot be based on judicial conduct. For instance, in *Bradley v. Milliken*, 620 F.2d 1143 (6th Cir. 1980), the district court judge was given the task of formulating a decree to effect the desegregation of the Detroit public schools pursuant to an order from the United States Supreme Court. In the process of doing so, the judge held an ex parte conference with representatives of the Detroit Board of Education. Plaintiffs moved for the judge's disqualification, based on the ex parte contact, which the district court denied. On appeal to the Sixth Circuit, the plaintiffs argued that the district court erred in denying their motion for disqualification under § 455. *Id.* at 1156-57. The Sixth Circuit Court of Appeals summarized the grounds for denying the § 455 motion as follows:

> The plaintiffs complain that Judge DeMascio created the appearance of partiality *by meeting ex parte with the Detroit Board's representatives* on August 15, 1975, even before plaintiffs' counsel had received a copy of the court's just filed remedial guidelines, to discuss an impending teachers' strike. The plaintiffs also argue Judge DeMascio engaged in what they term 'negotiations' with the Board in developing a desegregation plan, *a process from which they were excluded*.

*Id.* at 1157 (emphasis added). The Court held, however, that neither the alleged ex parte contact nor the alleged "negotiations" required the district judge's recusal under § 455 because both were "judicial activities." *Id.* Other courts have reached similar

10

conclusions. In *In re Big Rivers Electric Corp.,* for example, the Bankruptcy Court for the Western District of Kentucky held that, where a court engaged in *ex parte* contact with a Court-appointed examiner pursuant to court orders, the court was acting in its judicial capacity. *See Big Rivers,* 23 B.R. at 976.

In *Bradley*, the plaintiffs' § 455 motions were based in part on the judge's ex parte conduct with one party. In *Bradley,* the judge justified his decisions to meet with representatives of the Detroit Board of Education by noting that they were designed to promote judicial efficiency. The instant case presents a slightly different scenario. In this case, the Court met with counsel for all the parties and the United States Trustee, but excluded the lawyers representing Plaintiff and S.K. Tejpaul in their individual capacities. The Court did not invite counsel for Plaintiff and S.K. Tejpaul to the September 23, 2005 meeting because their attendance was unnecessary since both were already represented by Debtor's counsel. Furthermore, just as the Sixth Circuit Court of Appeals concluded that the ex parte contact at issue in *Bradley* was judicial in nature and therefore did not require disqualification under § 455, so does the conduct at issue in this case fail to support Plaintiff's motion to disqualify. In telling counsel for Plaintiff and S.K. Tejpaul that neither needed to attend the conference in chambers, the Court exercised its legal judgment, concluding that their presence was neither conducive to progress nor legally required. Both were represented by counsel in their capacity as principals of the Debtor, and the appointment of a CRO was an issue involving the Debtor.

Consequently, as in *Bradley,* the conduct challenged by Plaintiff's Motion is judicial conduct and is not a proper basis for a motion under § 455.

### 2. Plaintiff Was Not Prejudiced By the September 23, 2005 Hearing.

Plaintiff's Motion also fails the ultimate test of "whether a reasonable person would infer, from all the circumstances, that the judge's impartiality is subject to question." *Baker*, 458 F. Supp. at 376.

Plaintiff was not prejudiced in any fashion by having her personal attorney excluded from the in-chambers conference. In fact, Plaintiff *was* represented at the conference. In her complaint to the Sixth Circuit, Plaintiff herself states that she has two attorneys in the Jerome Duncan bankruptcy: Shafer & Weiner and Hertzberg P.C. *See* Complaint, at 3. Shafer & Weiner, through Mr. Jason Bank, represents the Debtor, Jerome Duncan, Inc. Mr. Bank attended both the 9/23/05 hearing *and* the 9/23/05 in-chambers hearing. *See* 9/23/05 transcript, at 128-29. Therefore, Plaintiff was represented at the conference in her capacity as President of the Debtor through the attendance of the Debtor's corporate counsel.

Although Plaintiff's personal attorney, Mr. Eric Rosenthal of Barris, Scott, Denn & Driker, was not present at the in-chambers conference, the conference did not have anything to do with the motion brought against Plaintiff in her personal capacity. Indeed, upon returning to the bench after the in-chambers conference, the Court expressly ruled that the motion to remove Plaintiff and Tejpaul was adjourned for an evidentiary hearing at a later date. *See* 9/23/05 Transcript, at 130. The Court merely ordered the parties to agree on a CRO and explicitly told Plaintiff that she could be involved in the process of selecting an individual to serve in this capacity. *Id.,* at 131. The in-chambers conference dealt only with corporate issues, and Plaintiff's corporate counsel was present to address those issues on Plaintiff's behalf.

For these reasons, this Court finds that Plaintiff was not prejudiced at all by the Court's decision to hold an in-chambers conference without Mr. Rosenthal. In the absence of prejudice to Plaintiff, a reasonable person could not conclude that the 9/23/05 meeting undermines the appearance of impartiality. Accordingly, this Court denies Plaintiff's Motion under § 455 on this ground.

### 3. Plaintiff Cites Only a Presumptive Legal Error Rather Than Evidence of Bias or Prejudice.

Even assuming *arguendo* that the Court erred in excluding Plaintiff's counsel from the in-chambers conference, the ultimate question under § 455 is whether that fact demonstrated *bias or prejudice* against Gail Duncan. Plaintiff has simply failed to carry her burden of showing that the Court's decision was the product of bias or prejudice, as opposed to a presumably erroneous view of the law. An error – even an error that affects Plaintiff in her personal capacity – is not necessarily the product of the type of bias or prejudice described in *Liteky. See Liteky,* 510 U.S. at 555-56. *See also Molinaro v. Watkins-Johnson CEI Division,* 359 F.Supp. 474, 477 (D.C. Md. 1973) ("[E]ven assuming that such a course of action was incorrect, the fact that a ruling of the court may constitute legal error does not provide a basis for disqualification.") (citations omitted). Indeed, Plaintiff's Motion argues only that the Court lacked good cause to hold an *in camera* meeting. *See* Plaintiff's Motion at 2-3. A lack of good cause is not tantamount to bias or prejudice. By alleging only a presumptive *legal* error, Plaintiff has failed to carry her burden under § 455. *In re Desilets*, 268 B.R. 516 (W.D. Mich. 2001). Accordingly, Plaintiff's motion is denied on this ground as well.

## III.

## CONCLUSION

Plaintiff's Motion is untimely, legally deficient, and unsupported by the record. For these reasons, as well as those noted above, this Court DENIES Plaintiff's Motion to Disqualify Bankruptcy Judge McIvor.

**Signed on November 28, 2006**

                                             **/s/ Marci B. McIvor**
                                             **Marci B. McIvor**
                                             **United States Bankruptcy Judge**