UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


In re:

JEROME DUNCAN, INC.,                      Case No. 05-59728
                                               Chapter 7
                    Debtor.            Hon. Marci B. McIvor
_____/

GAIL DUNCAN,

                Plaintiff,

v.                                                   Adv. Proc. 06-4570

FORD MOTOR CREDIT CORPORATION
and FORD MOTOR COMPANY,

                Defendants.
_____/

## OPINION DENYING PLAINTIFF'S MOTION FOR REMAND OR FOR ABSTENTION

For the reasons set forth below, this Court DENIES Plaintiff's Motion for Remand or for Abstention pursuant to 28 U.S.C. § 1334(c)(2) (mandatory abstention) and 28 U.S.C. § 1334(c)(1) (permissive abstention). Because this Court will not abstain from hearing this matter, remand pursuant to 28 U.S.C. § 1452 is not warranted.


I.

FACTUAL BACKGROUND

In June 2005, Jerome Duncan, Inc. ("JDI" or "Debtor"), an auto dealer located in southeastern Michigan, filed for Chapter 11 bankruptcy. This action was subsequently converted to a Chapter 7 proceeding.

Plaintiff, Gail Duncan, is an individual and was the designated Dealer Principal and operator of the Debtor. Plaintiff was also the majority shareholder, President, Secretary and Treasurer of the Debtor and directly controlled the Debtor's actions both before and during the Debtor's Chapter 11 case. Plaintiff is also a guarantor of the obligations of Debtor to Ford Motor Credit Corporation ("FMCC"). FMCC is the largest secured creditor of the Debtor and after liquidation of the assets of the Debtor, and their application to the FMCC debt, the Debtor is still indebted to FMCC in the amount of approximately $7,496,415.00.

On August 6, 2005, this Court entered a Stipulated Order Approving Agreement Between Debtor and FMCC to Obtain Secured and Superprioity Financing, Modifying the Automatic Stay, and Granting Adequate Protection (the "Financing Order"). The Financing Order states:

> 20. All defenses and claims of every kind and nature, whether existing by virtue of local, state, federal bankruptcy or non-bankruptcy law, by agreement or otherwise, against FMCC, its successors and assigns, and its officers, agents, servants, employees and attorneys, Debtor's Liabilities or the Collateral, as such defenses and claims may presently exist, are hereby forever waived, relinquished and released by Debtor and its estate, **Guarantor** and Limited Guarantor, including without limitation, any affirmative defense, counterclaim, setoff, deduction or recoupment, . . . (emphasis added)
>
> (Note that in the Stipulated Order "Guarantor" is defined as "Debtor's president, Gail Duncan, Jerome Duncan Leasing, Inc. and Shashi K. Tejpaul, the husband of Gail Duncan.")

Additionally, on January 31, 2006, this Court entered an Order Approving Sale of Assets Free and Clear of Liens, Claims and Encumbrances and Granting Related Relief (the "Sale Order"). The Sale Order includes the following language:

> F.   The Debtor has demonstrated sound business justification for the Sale

2

pursuant to § 363(b) of the Bankruptcy Code.

> G. There is no evidence that any party to the case, including but not limited to the Debtor, CRO, FMCC, Ford or the Buyer, acted in bad faith in connection with any aspect of the sale process or the sale.
>
> H. The Asset Purchase Agreement was negotiated, proposed and entered into by the Debtor and the Buyer without collusion, in good faith, and from arm's-length bargaining positions . . .
>
> I. The consideration provided by the Buyer for the Assets pursuant to the Asset Purchase Agreement (1) is fairly reasonable, (2) is the highest and best offer for the Assets, (3) will provide a recovery for the Debtor's creditors and other interested parties as equal to or greater than would be provided by any other practical available alternative and (4) constitutes reasonable equivalent value and fair consideration under Bankruptcy Code and applicable laws.

The Sale Order also states:

> 16. This Court retains jurisdiction to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendment thereto . . . retaining jurisdiction to. . .(c) resolve any disputes arising under or related to the Asset Purchase Agreement. . .
>
> 17. The transactions contemplated by the Asset Purchase Agreement were negotiated, proposed and entered into by the Debtor and the Buyer without collusion and in good faith, and are not subject to avoidance or otherwise under Section 363(n) of the Bankruptcy Code . . .
>
> 19. The terms and provisions of the Asset Purchase Agreement and this Sale Approval Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate, and its creditors…and any affected third parties including, but not limited to, all persons asserting Interest in the Assets to be sold to the Buyer….

The Plaintiff, (either in her capacity as principal of the Debtor or as Guarantor), did not challenge the entry of either the Financing Order or the Sale Order.

On March 29, 2006, Plaintiff filed a complaint in the Oakland Circuit Court against Defendants FMCC and Ford. Plaintiff alleges the following in her nine count Complaint:

> Count I     Conspiracy to Defraud. Count I alleges a conspiracy

between Ford, FMCC and Richard Duncan to defraud Jerome-Duncan, Inc. ("JDI") and Gail Duncan and to drive JDI out of business.

Count II          Fraud. Count II alleges that FMCC misrepresented the status of negative Net Cash and inaccurate financials as events of default under the loan documents.

Count III         Constructive Fraud. Count III alleges that FMCC's representations that it had multiple grounds to terminate JDI's franchise were false representations and were made so as to "scare" JDI into filing for bankruptcy.

Count IV          Breach of Mortgage. Count IV alleges that FMCC breached the duties of good faith allegedly arising under Article 2 of the Uniform Commercial Code by declaring events of default under a real estate mortgage between FMCC and Gail Duncan based upon its calculation of the "Net Cash" requirement under the mortgage instrument.

Count V.          Unjust Enrichment. Count V alleges unjust enrichment and asserts that there is an implied covenant on the part of FMCC and Ford to compensate JDI for the loss of its goodwill as a result of the bankruptcy filing.

Count VI          Violation of Michigan Antitrust Reform Act. Count VI alleges violation of the Michigan Antitrust Reform Act ("MARA") and claims that Ford established "factory dealerships" which allegedly covertly obtained and use confidential information belonging to JDI.

Count VII         Fraud in the Inducement. Count VII alleges that Gail Duncan was fraudulently induced to enter into the mortgage instrument based upon claimed representations by FMCC that it would never exercise its right to foreclose the mortgage by advertisement.

Count VIII        Fraud in the Inducement. Count VIII alleges fraud in the inducement with respect to Gail Duncan's entry into a cross default agreement.

Count IX          Inoperative Waiver. Count IX alleges that waivers contained in the mortgage instrument signed by Plaintiff were not freely, voluntarily and knowingly agreed to and that the waivers are, therefore, invalid.

In essence, Plaintiff's complaint alleges that Defendants conspired to cause, and did in fact bring about, the financial ruin of Plaintiff and Debtor by finding Debtor in default on its financial obligations to FMCC.  Counts I, II, III, V, and VI relate to claims of JDI. Counts IV, VII, VIII, and IX relate to claims of Gail Duncan in her capacity as mortgagor on the mortgage between FMCC and Plaintiff.

On April 19, 2006, FMCC filed a notice of removal pursuant to 28 U.S.C. § 1334 and Fed. R. Bankr. P. 9027. The action was removed to this Court and assigned adversary proceeding number 06-4570. Ford subsequently filed a statement as required by Fed. R. Bankr. P. 9027(E), acknowledging that the proceeding was core and consenting to the entry of final orders by the Bankruptcy Court in the event that the proceeding was determined to be non-core.

On April 29, 2006, Plaintiff filed a Motion to Withdraw the Reference, arguing that immediate withdrawal was necessary because the Bankruptcy Court lacked subject matter jurisdiction over Plaintiff's claims and was unable to conduct the jury trial requested by Plaintiff.  The United States District Court for the Eastern District of Michigan entered an order denying the motion on August 11, 2006.

On May 19, 2006, while Plaintiff's Motion to Withdraw the Reference was pending, Plaintiff filed the Motion for Remand or for Abstention that is presently before the Court. On May 31, 2006, this Court entered an Ex Parte Order for Enlargement of Time, granting Defendants until September 18, 2006 to file a response to Plaintiff's Motion for Remand or Abstention.

On September 18, 2006, Ford and FMCC filed a Motion to Dismiss Plaintiff's claims against them based on Plaintiff's lack of standing and her failure to state a claim

against Ford. Also on that date, Ford and FMCC filed a response to the Motion for Remand or Abstention, requesting that Plaintiff's Motion for Remand or Abstention be denied.

II.

ANALYSIS

A.  Jurisdiction and Burden of Proof

Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution. This principle reflects the need to respect state courts in matters arising under federal law. The party invoking jurisdiction bears the burden of proving that all prerequisites to jurisdiction are satisfied. Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand. When ruling on a motion for remand, courts construe all doubts in favor of remand. *In re Transamerica Fin. Life Ins. Co.,* 302 B.R. 620, 624-5 (N.D. Iowa 2003).

B.  Mandatory Abstention under 28 U.S.C. § 1334(c)(2)

In the Sixth Circuit, a bankruptcy court must abstain from exercising jurisdiction over a case removed pursuant to 28 U.S.C. § 1452(a), and remand that proceeding, when the statutory prerequisites of 28 U.S.C. § 1334(c)(2) are satisfied. *Robinson v. Michigan Consol. Gas Co.*, 918 F.2d 579, 584 n.3 (6th Cir. 1990) ("abstention provisions of 28 U.S.C. § 1334(c)(2) apply even though a case has been removed pursuant to 28 U.S.C. § 1452"). Section 1334(c)(2) provides:

(c)(2) Upon timely motion of a party in a proceeding based upon a State

> law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). More simply put, under 28 U.S.C. § 1334(c)(2), a bankruptcy court must abstain and thus remand when the following six requirements are satisfied: (1) the motion is timely filed; (2) the proceeding is "based upon a State law claim or State law cause of action;" (3) the claim or cause of action is related to a bankruptcy case, but did not arise in or under the bankruptcy case (in other words, the claim or cause of action is non-core); (4) the only basis for original jurisdiction in federal court is the bankruptcy filing; (5) the State law claim or cause of action is the subject of "an action [that] is commenced . . . in a State forum of appropriate jurisdiction;" and (6) the State court action "can be timely adjudicated." 28 U.S.C. § 1334(c)(2). *Kmart Creditor Trust v. Conaway, (In re Kmart Corp.*), 307 B.R. 586 (Bankr. E.D. Mich. 2004); *In re Transamerica Fin. Life Ins. Co.,* 302 B.R. 620, 627 (N.D. Iowa 2003); *accord, Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corp.*), 86 F.3d 482, 497 (6th Cir. 1996); *Loomis Elec., Inc. v. Lucerne Prods., Inc.*, 225 B.R. 381, 387 (N.D. Ohio 1998).

Ford and FMCC oppose abstention and remand. They argue that abstention and remand are not warranted because element three, *supra*, concerning whether the claim or cause of action is core, and element six, *supra*, concerning timely adjudication, have not been met.

C.   Determination of Whether the Claim or Cause of Action Is Core or Non-core

A proceeding is considered "core" only if it "invokes a substantive right created by federal bankruptcy law or one which could not exist outside of bankruptcy." *Sanders Confectionery Prod., Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 483 (6th Cir. 1992). "Claims that arise under the Bankruptcy Code or arise in a bankruptcy case are core matters; claims that relate to a bankruptcy case, but do not arise in a bankruptcy case or under the Bankruptcy Code are non-core." *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 606 (S.D. Tex. 1999) (internal quotations omitted). Mandatory abstention applies only to non-core proceedings, and applies only when all the other requirements of 11 U.S.C. § 1334(c)(2) are satisfied. *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1206 (5th Cir. 1996). Core proceedings may be heard by a bankruptcy court or may be remanded to state court pursuant to 28 U.S.C. § 1452.

      1.      <u>Parties' Arguments</u>

Defendants argue that Plaintiff's claims are core claims for three reasons: (1) but for the bankruptcy proceeding, Plaintiff's claims would not exist; (2) Plaintiff's complaint sets forth causes of action *that belong to the Debtor* (11 U.S.C. § 541(a)) and actions that belong to the Debtor are necessarily core*;* and (3) Plaintiff cannot prevail in the state court litigation without this Court's determination that the waivers set forth in the Financing Order are ineffective as to Gail Duncan.

Plaintiff argues that her state court causes of action are not core because resolution of the state court action will have no effect on the bankruptcy estate for two

reasons: (1) Plaintiff's state court Complaint was drafted so that all operative factual allegations halt at the moment of the bankruptcy filing and, therefore, the state court complaint does not, and cannot, have anything to do with the bankruptcy of JDI; and (2) the state court Complaint is an action between parties other than the Debtor.

    2.    <u>Court's Findings</u>

This Court finds that the state court causes of action are core matters for the following reasons. First, Plaintiff's state court causes of action are core because those causes of action would not exist but for the bankruptcy proceeding. *In re DeLorean Motor Co*, 155 B.R. 521, 525 (9th Cir. BAP 1993)(a claim will not be considered core "if it is a state law claim that could exist outside of bankruptcy and is not inextricably bound to . . . a right created by the Bankruptcy Code.") In this case, the root of each of Plaintiff's claims is her decision to file a bankruptcy petition on behalf of the Debtor. *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir. 2006)(the Plaintiff's claims are core because "the genesis of [plaintiff's] state law action was the bankruptcy proceeding.") According to Plaintiff, JDI's bankruptcy was the goal of the alleged conspiracy between Ford and FMCC and the cause of her damages. See, e.g., Ex. B, ¶ 158 (Count I); ¶ 166 (Count II); ¶ 177 (Count III);[1] ¶ 185 (Count IV); ¶ 194 (Count V); ¶ 192 (Count VI). Thus, Plaintiff's claims against Defendants could not exist

---

[1] For example, Plaintiff argues in Count III that "Ford Credit and Ford knew that their conclusions, their collective threats and their claimed rights to move against Ms. Duncan and her dealership were false. All of these actions were taken to literally [sic] scare Gail Duncan into seeking bankruptcy protection. Defendants' claims were created to cause Gail Duncan to rely upon the same and act upon in fear and hopelessness." Complaint, ¶ 177.

9

but for JDI's filing its bankruptcy petition. As such, Plaintiff's claims are core because they are "inextricably intertwined" with the resulting bankruptcy proceedings.

Second, the majority of Plaintiff's state court causes of action are core because five of the nine counts of Plaintiff's Complaint are causes of action which actually *belong to the Debtor,* and not to Gail Duncan personally.  Any causes of action that belong to the Debtor at the time bankruptcy proceedings are filed are property of the estate. 11 U.S.C. § 541. *See, e.g., Honigman v. Comerica Bank (In re Van Dresser Corp.),* 128 F.3d 945 (6th Cir. 1997); *In re Lott*, 332 B.R. 292 (Bankr. E.D. Mich. 2005); *Cottrell v. Schilling (In re Cottrell)*, 876 F.2d 540 (6th Cir. 1989).  In this case, Counts I, II, III, IV and VI of Plaintiff's Complaint against Defendants are based on harm allegedly *incurred by Debtor* through a conspiracy that culminated in the Debtor filing its bankruptcy petition.  In fact, the Debtor specifically included Plaintiff's claims in its May 11, 2006 listing of potential claims and causes of action. See Debtor's Chapter 11 Final report and Schedule of Post-Petition Debts ("Debtor's Chapter 11 Final Report").  If Plaintiff suffered damages from Defendant's alleged fraud, these damages are owed to Plaintiff *in her capacity as principal of the Debtor,* and not individually.  Therefore, Plaintiff's claims for fraud are property of the estate and, as such, are core proceedings.

Third, Plaintiff's state court causes of action are core because Plaintiff cannot prevail in the state court litigation without a determination that the waivers set forth in the Financing Order are ineffective as to Plaintiff.  The Financing Order resolves many core bankruptcy issues.  The Court retains jurisdiction to enforce its orders, particularly when the order relates to a core issues.

This Court rejects Plaintiff's argument that Plaintiff's state court causes of action

10

will not have any effect on the bankruptcy estate. Counts I, II, III, IV and VI are causes of action which belong the Debtor and thus, necessarily, impact the bankruptcy estate. Additionally, the question of whether the Financing Order is effective as to Plaintiff and the question of whether the Sale Order is valid are so fundamental to the resolution of the underlying bankruptcy case that they are best settled by this Court because this Court issued those Orders. This Court acknowledges that, generally, a state court can interpret bankruptcy court orders. *Kmart Creditor Trust v. Conaway (In re Kmart Corp.)*, 307 B.R. 586 (Bankr. E.D. Mich. 2004). However, this case is distinguishable for the *Kmart* case because in *Kmart*, the Kmart bankruptcy was filed in the Northern District of Illinois while the state court action was filed in Oakland County, Michigan. The Oakland County action was removed to the Bankruptcy Court for the Eastern District of Michigan and Defendants moved for abstention and remand. In the *Kmart* case, the choice of forum was between the Bankruptcy Court for the Eastern District of Michigan and the Oakland County Circuit Court. Neither court had any special insight with respect to the Orders issued by the Bankruptcy Court for the Northern District of Illinois. In this case, this Bankruptcy Court is very familiar with the Orders it issued, including the Financing Order and the Sale Order.

This Court also rejects Plaintiff's argument that the state court causes of action are disputes between non-debtor parties and, therefore, should not be heard in bankruptcy court. In this case, Plaintiff was the majority shareholder, President, Secretary, and Treasurer of the Debtor during the relevant time frame. Any actions she took with respect to the Debtor were as its principal; Plaintiff has no independent cause of action against the Defendants except possibly as to Counts IV, VII, VIII, and IX of the

11

Complaint. If Plaintiff is allowed to pursue claims that belong to the Debtor, there is duplicative litigation and the possibility that Plaintiff would recover personally on claims that belong to the Debtor. Because at least five counts of Plaintiff's Complaint allege causes of action which belong to the Debtor, these causes of action are core.

In summary, this Court finds that the Plaintiff's state court causes of action are core because: (1) Plaintiff's claims are inextricably bound to the bankruptcy proceedings; (2) because Plaintiff's complaint states causes of action *that belong to the Debtor* (11 U.S.C. § 541(a)); and (3) because Plaintiff cannot prevail in the state court litigation without overturning previous findings of this Court and setting aside previous orders issued by this Court.

D.  Timely Adjudication.

Defendants argue that Plaintiff has not provided any evidence or support for her position that a state forum will provide timely adjudication of her claims and, therefore, element six, *supra*, required for mandatory abstention has not been met. Plaintiff disagrees.

This Court finds that Plaintiff has not proven that the state forum will provide a timely adjudication of her claims. *See, Parret v. Bank One, N.A. (In re National Century Financial Enterprises, Inc. Investment Litigation)*, 323 F. Supp. 2d 861, 881 (S.D. Ohio 2004)("the burden of proving timely adjudication is on the party seeking abstention.") The mere allegation that a case may be timely adjudicated in a state forum is not enough to support the "timely adjudication" element of mandatory abstention.

Additionally, this Court can timely adjudicate this matter because it is already

12

intimately familiar with the facts and issues alleged in Plaintiff's action and is better positioned to adjudicate this action more quickly than any state court. Likewise, there is a related adversary proceeding pending before this Court, *Ford Motor Credit Co. v. Duncan* (Adversary Proceeding No. 06-4661). Adjudication of both actions in this Court will conserve judicial resources, streamline discovery, avoid inconsistent rulings and aid in the timeliness of both actions.

Because the requirements for mandatory abstention have not been met (specifically elements three and six, *supra*), this Court concludes that mandatory abstention does not apply to this matter.

E.    Permissive Abstention under § 1334(c)(1) and Equitable Remand under § 1452.

Under § 1334(c)(1)(permissive abstention) and under § 1452 (equitable remand), courts have discretion to abstain from hearing state law causes of action, and remand those causes of action, whenever doing so is appropriate. Section 1334(c)(1) states:

> (c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect from State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Section 1452(b) states:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision not to remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of the title or by the Supreme Court of the United States under section 1254 of this title.
>
> The factors to be considered in determining whether permissive abstention is

13

appropriate are similar to the factors used in analyzing whether equitable remand is appropriate. Courts have listed the following non-exclusive factors as relevant: (1) the effect or lack of effect on the efficient administration of the estate if a court abstains; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of this court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; and (13) any unusual or other significant factors. *In re Tremaine*, 188 B.R. 380, 384 (Bankr. S.D. Ohio 1995); *In re Underwood*, 299 B.R. 471 (Bankr S.D. Ohio 2003).

In this case, the majority of the above-listed factors support this Court's retention of jurisdiction in this case. Specifically, the following factors support this Court's retention of jurisdiction in this case:

(1) It is more efficient for this Court to retain jurisdiction. The Debtor's Chapter 11 and 7 proceedings have been before this Court for well over a year. Plaintiff and Defendants were intimately involved in those proceedings and have filed a number of documents with this Court that bear directly on Plaintiff's claims in this case. *See, e.g.*,

14

Disclosure Statement filed in this case.

(2) Although several counts of Plaintiff's Complaint raise issues controlled by state law, this Court is capable of resolving these issues, especially since there are various bankruptcy orders issued by the Court which may control the resolution of the state law issues.

(3) Although Plaintiff's claims arise under state law, the law applicable to Plaintiff's claims is not unusually complex. To the contrary, Plaintiff's claims are based on familiar fraud, breach of contract, antitrust, and conspiracy theories. Thus, it is unnecessary for this Court to abstain under the theory that the state court will possess necessary expertise that this Court lacks. Plaintiff has offered no evidence that any particular expertise is necessary in this matter.

(4) There exists no related proceeding commenced in state court.

(5) There is no jurisdictional basis other than § 1334 for remanding the action.

(6) Plaintiff's claims are intimately bound with the underlying bankruptcy action. The Debtor's bankruptcy is at the heart of Plaintiff's claims – and, indeed, many, if not all, of Plaintiff's claims belong to the Debtor's estate under 11 U.S.C. § 541. Accordingly, this Court has jurisdiction over Plaintiff's claims and this action is directly related the Debtor's bankruptcy proceedings.

(7) This case is both in form and substance a core proceeding.

(8) It is not feasible to sever state law claims from core bankruptcy matters to allow judgments to be entered by the state court. This case turns on the determination of the core bankruptcy matters which include the validity of Plaintiff's alleged releases.

(9) Retaining jurisdiction over this case will not burden this Court's docket. In

fact, because this Court was involved in the Jerome-Duncan, Inc. bankruptcy case, this Court is in a better position than the state court for making a swift decision based on the facts and arguments presented.

(10) By retaining jurisdiction, this Court discourages Plaintiff from forum shopping. In her Disclosure Statement in the underlying bankruptcy proceeding, Plaintiff (along with S.K. Tejpaul) submitted a proposed complaint that set forth the very same conspiracy theory alleged in Plaintiff's complaint in the present action.  However, Plaintiff identified that theory as giving rise to claims belonging to the Debtor and proposed filing her complaint on behalf of the Debtor as an adversary proceeding before this Court.  Plaintiff subsequently replaced some of the proposed federal causes of action set forth in her disclosure statement with claims under Michigan law and has filed her complaint in state court. Yet the substance of the complaint – the alleged conspiracy between Defendants to force the Debtor into bankruptcy – remains the same.

(11) Although Plaintiff has demanded a jury trial, she has no right to trial by jury for equitable claims, which are the majority of her claims. *Longo v. McLaren (In re McLaren*), 3 F.3d 958, 960 (6th Cir. 1993).  Five of Plaintiff's nine claims request equitable relief.  These are: (1) Count III, Constructive Fraud. *See* 37 C.J.S. Fraud § 5; (2) Count V (Unjust Enrichment). *See Murray Hill Publications, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 638 (6th Cir. 2001); (3) Count VII (Fraud in the Inducement). *See Henderson v. Chrysler Corp.*, 477 N.W.2d 505, 507 (Mich. Ct. App. 1991) (noting that rescission is an equitable remedy); (4) Count VIII (Fraud in the Inducement). *Id.*; and (5) Count IX (Waiver). *See* 28 Am. Jur. 2d, Estoppel and Waiver § 197. As for the remaining four claims, the bankruptcy court is authorized to conduct a

jury trial, should it be determined that these claims are claims for monetary relief.

Accordingly, application of the *Trans-Service* factors favors denial of Plaintiff's motion for discretionary abstention.

For the above stated reasons, this Court finds that permissive abstention under 28 U.S.C. § 1334(c)(1) does not apply to this case and that this Court retains its jurisdiction over this matter.

## III.

## CONCLUSION

For the reasons set forth above, this Court DENIES Plaintiff's Motion for Remand or for Abstention pursuant to 28 U.S.C. § 1334(c)(2) (mandatory abstention) and 28 U.S.C. § 1334(c)(1) (permissive abstention). Because this Court will not abstain from hearing this matter, remand pursuant to 28 U.S.C. § 1452 is not warranted.

**Signed on November 28, 2006**

                                         **/s/ Marci B. McIvor**
                                       **Marci B. McIvor**
                                       **United States Bankruptcy Judge**